### RIEGAL SACK CO. v. TIDEWATER PORTLAND CEMENT CO.

(Supreme Court, Appellate Term, First Department.   May 9, 1916.)

1. SALES ⬤⟶377—REMEDIES OF SELLER—ACTION FOR BREACH—PLEADING—ABILITY TO PERFORM.
    In an action for breach of a contract to buy cement sacks, where the seller's complaint alleged that it was at all times ready and willing to perform the contract with respect to furnishing the sacks, and would have done so but for the buyer's cancellation, notification, neglect, and refusal, such allegations were sufficient to show that the seller was able to perform, had performance not been prevented by the buyer.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. § 1092; Dec. Dig. ⬤⟶377.]

2. SALES ⬤⟶377—REMEDIES OF SELLER—ACTION—PLEADING.
    In an action for breach of a contract of sale, after the seller alleges readiness, ability, and willingness to perform, he must either allege a tender of performance or a waiver by the buyer of such tender.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. § 1092; Dec. Dig. ⬤⟶377.]

3. SALES ⬤⟶153, 177—BREACH OF CONTRACT—WAIVER OF TENDER.
    Where there is a contract to sell goods and deliver them when ordered within a certain time, and the buyer cancels outstanding orders, and refuses to give any further orders, it is a breach of contract by the buyer, while notification that the buyer will not order or accept further deliveries is a waiver of further tender, particularly where the seller manufactures the goods for the buyer.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 358–366, 445–450; Dec. Dig. ⬤⟶153, 177.]

4. SALES ⬤⟶377—PLEADING—COMPLAINT—PRESUMPTION.
    In an action for breach of a contract of sale, the court cannot presume, in favor of the complaint, that the buyer's cancellation of the contract, alleged as a breach, was wrongful.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. § 1092; Dec. Dig. ⬤⟶377.]

5. SALES ⬤⟶377—REMEDIES OF SELLER—ACTION FOR BREACH—PLEADING.
    In an action by the seller of cement sacks for the buyer's failure to order deliveries as agreed, where the complaint set forth the buyer's refusal to order or accept the sacks, and that the seller had, up to the time of refusal, duly performed all the other conditions of the agreement,

---

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and was ready to furnish, sell, and deliver the sacks in accordance with the terms of the agreement, such complaint sufficiently raised the issue of whether the buyer's refusal was wrongful, without express allegation to that effect, as the conclusion necessarily followed from the matters alleged.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1092; Dec. Dig. ☞377.]

6. SALES ☞382—DAMAGES—PROOF—STATUTE.
Under Personal Property Law, § 145, as added by Laws 1911, c. 571, where the contracting buyer of cement sacks wrongfully refused to give the seller further orders as agreed, the seller could prove its damages, without proof that it manufactured or bought the bags.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1096; Dec. Dig. ☞382.]

7. SALES ☞150(3)—CONTRACT—IMPLICATION OF TERM.
Where a contract for the sale and delivery of cement sacks is silent as to the time for delivery after the giving of an order, a term will be implied in the contract that such deliveries are to be made in a reasonable time.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 356; Dec. Dig. ☞150(3).]

8. SALES ☞387—REMEDIES OF SELLER—ACTION FOR BREACH—QUESTION FOR JURY.
In an action by the seller of cement bags for the buyer's refusal to give further orders as agreed, whether the buyer's cancellation of its order to deliver a second carload and its refusal to give a new order were justified, because the seller notified that it could not deliver the second carload for two or three weeks, was for the jury.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1108; Dec. Dig. ☞387.]

Appeal from City Court of New York, Trial Term.

Action by the Riegal Sack Company against the Tidewater Portland Cement Company. From a judgment dismissing its complaint, and an order granting defendant's motion to dismiss the complaint and for judgment on the pleadings, upon which order the judgment appealed from was entered, plaintiff appeals. Judgment reversed, and new trial ordered.

Argued March term, 1916, before LEHMAN, PENDLETON, and WHITAKER, JJ.

Rollins & Rollins, of New York City (Alfred A. Wheat, of New York City, of counsel), for appellant.

Parker, Davis & Wagner, of New York City (Arnold L. Davis and N. Raymond Heater, both of New York City, of counsel), for respondent.

LEHMAN, J.  The plaintiff brought an action for breach of contract. The complaint alleges:

That the plaintiff and the defendant entered into an agreement in writing whereby "the defendant agreed to purchase from the plaintiff, and the plaintiff agreed to furnish, sell, and deliver to the defendant at Union Bridge, Md., 250,000 seven-ounce first quality Osnaburg cement sacks, and the defendant agreed to pay the plaintiff for said sacks the sum of $82.50 per thousand, and it was further agreed by the terms of said contract that delivery of the said

sacks was to be made as ordered by the defendant between June 22, 1914, and December 31, 1914; that the said sacks were to be manufactured by the plaintiff at Jersey City, N. J., and were to be transported therefrom and delivered to the defendant at Union Bridge, Md., and that said agreement related wholly to interstate commerce; that plaintiff duly performed all the conditions of said agreement on its part to be performed except the furnishing, sale, and delivery of the 169,182 sacks hereinafter mentioned, and furnished to the defendant under said agreement and as ordered by it 80,818 of the said sacks, which were accepted and paid for by the defendant, but the defendant, prior to the 31st day of December, 1914, canceled all outstanding orders theretofore given, and notified the plaintiff that it would not order or accept from the plaintiff the remaining 169,182 sacks or pay therefor, and neglected and refused to order, accept, or pay for the same; that plaintiff was at all times ready and willing to perform the said agreement on its part with respect to furnishing, selling, and delivering the said 169,182 sacks, and to furnish, sell, and deliver the same in accordance with the terms of said agreement, and would have furnished, sold, and delivered said 169,182 sacks to defendant according to the terms of the said agreement, but for defendant's cancellation, notification, neglect, and refusal; that by reason of the defendant's said default, the plaintiff was damaged in the sum of $3.806.60, no part of which has been paid, except the sum of $1,903.30, although the balance thereof has been duly demanded."

The answer, in addition to certain denials, sets up as a "separate defense":

That on or about October 7, 1914, the defendant by letter ordered plaintiff to make up at once a carload of said sacks and requested plaintiff to notify the defendant by return mail when same would be ready for shipment; that plaintiff on the following day notified the defendant that it would be unable to deliver the sacks so ordered by defendant for 2 or 3 weeks, and the defendant thereupon canceled its said order for a carload of cement sacks and said notice of cancellation was given in writing; "that because of plaintiff's failure and refusal to deliver said carload of sacks in accordance with the terms and provisions of said contract defendant was compelled to purchase said carload of sacks, which would number about 84,500, elsewhere; that it was mutually understood and agreed between the parties hereto that plaintiff could and would ship to defendant a carload of cement sacks in 4 or 5 days after receipt of order for same, but would like 10 days' notice at the most in which to make delivery of a carload of sacks."

Annexed to the answer are all the writings which passed between the parties.

The plaintiff filed a reply to this so-called separate defense, in which it admitted most of the material allegations in the answer, except that it sets forth (paragraph IV of reply):

"Answering the allegations in paragraph 8 of said answer, the plaintiff admits that under ordinary circumstances from 4 to 10 days after receipt of an order would be a reasonable time within which to make delivery of the bags referred to, admits that the plaintiff requested the defendant to give it at least 10 days' notice of its required shipments of bags, and admits that the defendant, on or about the 30th day of July, 1914, promised to give the plaintiff at least 10 days' notice of all required deliveries of bags, and that on or about the 7th day of October, 1914, the defendant notified the plaintiff that it would not require of the plaintiff any further shipments of bags until the latter part of December, 1914; but, except as admitted, denies that there was any agreement between the parties with respect to the delivery of said bags except that said bags should be delivered within such time after receipt of an order therefor as was reasonable under all the circumstances then existing, and, except as admitted, denies each and every other allegation contained in said paragraph 8."

The reply also states (paragraph VI of reply):

"Further replying, plaintiff alleges that prior to the 7th day of October, 1914, defendant notified plaintiff that it would place an order for a carload of the sacks under the existing contract between the parties, provided the plaintiff would alter the terms thereof so that payment therefor could be made in 30 days, instead of 10 days, which plaintiff refused to do, and thereupon defendant notified plaintiff that it would not order any of said bags until the latter part of December, 1914, and did not prior to the 7th day of October, 1914, withdraw or modify said notice, and plaintiff accepted and relied thereon; that the reasonable time for the plaintiff to manufacture and deliver to the defendant the said carload of bags under the circumstances existing on the 7th day of October, 1914, was from 2 to 3 weeks."

At the opening of the trial the defendant made a motion to dismiss the complaint on the ground that it fails to set forth a cause of action. A discussion followed between court and counsel, and in the course of that discussion it developed that, after the plaintiff had received the cancellation of the order of October 7th, it gave orders to stop manufacturing the sacks, and that the defendant thereafter did not order any more sacks, but made a settlement in regard to the third carload. After this discussion the trial judge granted judgment to the defendant upon the pleadings and upon the "agreed facts."

In granting this judgment he stated, in effect, that he felt that the judgment so ordered was correct, and that the procedure adopted was calculated to bring up before this court for review, in the most speedy and economical manner, the questions that were doubtful in this case. Both parties acquiesced in this procedure, but the record shows clearly that the case was not actually submitted to the court for any final decision upon an agreed state of facts. The discussion shows that the defendant claimed, first, that the complaint sets forth no cause of action; second, that if the complaint does set forth a cause of action, then the pleadings taken together with the agreed facts show as a matter of law that the defendant never breached the contract; and, third, that if it did breach the contract the plaintiff would not, under the pleadings and the agreed facts, be able to show any damages. The purpose of the procedure adopted was to finally determine these questions as matters of law, and if the pleadings, as amplified by the agreed facts, still leave any issues open, then the plaintiff is entitled to a reversal.

[1-6] The defendant claims that the complaint fails to set forth a cause of action, in that it does not set forth that the plaintiff was able to perform, or that the cancellation by the defendant was wrongful. The complaint sets forth that:

The plaintiff was at all times "*ready and willing* to perform the said agreement on its part with respect to furnishing, selling, and delivering the said 169,182 sacks, and to furnish, sell, and deliver the same in accordance with the terms of the agreement, and would have furnished, sold, and delivered the said 169,182 sacks to defendant according to the terms of the said agreement, but for defendant's cancellation, notification, neglect, and refusal."

There seems to me to be no doubt but that these words are sufficient to show that the plaintiff was able to perform. There is strong authority in cases decided in other jurisdictions for the view that an allegation of readiness to perform implies also ability to perform, and in this case the allegation that the plaintiff was ready and willing to

perform is supplemented by the allegation that it would have performed, but for the defendant's cancellation, notification, neglect, or refusal. These allegations, in my opinion, are amply sufficient to show that the plaintiff was able to perform, if performance had not been prevented by the defendant. The cases in this state which the defendant cites are not contrary to this view. They hold only that an allegation of readiness or willingness, or of readiness, ability, and willingness, to perform, is not equivalent to an allegation of tender of performance. In this case the plaintiff must also allege either a tender of performance or waiver by the defendant of such a tender. He has attempted to allege such a waiver by alleging an anticipatory breach of the contract in the words:

"But the defendant prior to the 31st day of December, 1914, canceled all outstanding orders theretofore given and notified the plaintiff that it would not order or accept from the plaintiff the remaining 169,182 sacks or pay therefor and refused to order, accept, or pay for the same."

It seems to me that where the complaint sets forth a cause of action upon a contract to sell goods and to deliver them when ordered within a certain time, an allegation of a cancellation of outstanding orders and a refusal to give any further orders is sufficient to show a breach of the contract and a notification that the defendant would not order or accept any further deliveries was a clear waiver of further tenders, especially in view of the allegation that the plaintiff was to manufacture the goods to fill the order.

The defendant urges, however, that this is true only if the allegations of the complaint show that the cancellation and refusal to order or accept was wrongful, and that the court cannot presume that a cancellation made is a wrongful cancellation. As a rule of law this statement is correct, but it has no application to the case at bar. The cancellation of outstanding orders is not made the basis of this action. The breach claimed is the refusal to order or accept the sacks, and the cancellation of outstanding orders is material only upon the point whether such refusal was, as a matter of law, wrongful if the plaintiff had, up to that time, duly performed all the other conditions of the agreement, and was ready to furnish, sell, and deliver these sacks "in accordance with the terms of the agreement." The complaint sets forth all these facts, and the conclusion that the cancellation of outstanding orders and the refusal to give any further orders was wrongful necessarily follows as a matter of law. The defendant seems throughout to misunderstand the legal effect of these allegations of the complaint, and has set forth as a separate and affirmative defense allegations which constitute really a denial of the allegations on the part of the plaintiff that at the time of the cancellation it was ready and willing to furnish and deliver, and would have furnished and delivered the remaining sacks *"in accordance with the terms of the agreement"* if the defendant had not notified it of its cancellation of outstanding orders and refusal to accept further deliveries. Under these allegations of the complaint the plaintiff sufficiently raises the issue of whether the refusal was wrongful. If this refusal was wrongful, then there is no doubt but that plaintiff may prove its damages as provided in sec-

tion 145 of the Personal Property Law, as added by Laws 1911, c. 571, without proof that it actually manufactured or bought the bags.

[7, 8] The only question which requires consideration is whether, upon the agreed facts, the defendant's cancellation of its order to deliver the second carload and its refusal to give a new order was justified as a matter of law; in other words, whether under the agreed facts the plaintiff was ready, able, and willing to deliver the sacks in accordance with its contract. The contract is silent as to the time of delivery after an order was given, and therefore a term will be implied in the contract that such deliveries should be made in a reasonable time. Both sides agree that under ordinary circumstances a reasonable time would be from 4 to 10 days. It is further agreed that the plaintiff notified the defendant that it could not deliver the bags ordered for 2 or 3 weeks. The defendant contends that under these circumstances it was justified, as a matter of law, in refusing to accept such a delivery. That contention, however, is unsound, for the plaintiff claims that these bags were not ordered under ordinary circumstances, but that prior to the giving of the order the defendant notified it that it would not order any bags until December. If such notification was given, it would not constitute a modification of the contract; but it would be material upon the question of what would be a reasonable time for delivery of the bags under those particular conditions. There is nothing in the record which would permit the inference that under those circumstances a delivery of these sacks 2 or 3 weeks thereafter would not be within a reasonable time. The plaintiff is entitled under its pleadings to have this issue determined by the jury.

Judgment should therefore be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.